UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Laborers' Pension Trust Fund, et. al.,

    Plaintiffs,

v.                                                                                  Case No. 12-13122

Alford Construction Group, LLC,                         Honorable Sean F. Cox

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

    Plaintiffs, who are trustees for the Detroit chapters of various Laborers' Union fringe benefit trusts, sued Defendant Alford Construction Group ("Defendant") for breach of their contractual fringe benefit contribution agreement. Plaintiffs seek to recover from Defendant over $23,000 in alleged delinquent fringe benefit contributions. Pursuant to the Employee Retirement Income Security Act ("ERISA")[1], Plaintiffs also seek attorneys' fees and costs of over $21,000.

    Following the close of discovery, Defendant filed its Motion for Summary Judgment on May 20, 2013. Plaintiffs contend that Defendant did not provide records adequate to produce a reliable audit and therefore, based on the reasoning in Grimaldi[2], Defendant bears the burden of proving which of the hours worked are not covered by the parties' labor agreement. Defendant responds that it did provide records sufficient to produce a reliable audit and disputes the amount of delinquent fringe benefit contributions, if any, owed to Plaintiffs. Defendant also disputes the reasonableness

---

[1] 29 U.S.C. § 1132(g)(2)(D).

[2] 30 F.3d 692, 697 (6th Cir. 1994).

of Plaintiffs' requested attorneys' fees.

For the reasons set forth below, this Court GRANTS in part and DENIES in part Plaintiffs' motion.

## BACKGROUND

Prior to the commencement of this litigation, Plaintiffs requested that Defendant produce certain payroll and employment documents so that a payroll audit could be performed. (*See* Letter dated June 3, 2011, Whatley Aff. at Ex. G). Specifically, Plaintiffs requested that Defendant produce the following documents, starting with 2009:

- **Employee earnings records by calendar year, showing each employee's name, social security number, straight time and overtime hours worked, rate of pay, gross earnings, all deductions, and net pay.**

- W-2 form filed for each employee annually.

- W-3 form filed for each year.

- Current year M.E.S.C. Form 1017 (employers quarterly wage detail report).

- 1099s issued annually.

- 1096 form filed for each year.

(Whatley Aff. at Ex. G). Plaintiffs' request went mostly unfulfilled, as Defendant only produced the

following books and records:

a) "Certified payroll" reports for the period from April 20, 2011 to September 28, 2011 for the Bunche School job;

b) W-2 and W-3 forms for 2011;

c) 1096 and 1099 forms for 2011;

d) Quarterly MESC Wage detail reports of 2nd and 3rd quarter of 2011;

  e)  Check stubs for April 2011 - September 2011; and

  f)  Check Register for defendant's PNC Bank Account for period of time from January 2011 to May 7, 2012.

(Whatley Aff. at ¶ 12).

Plaintiffs conducted an initial audit, followed by several revisions, based on the books and records provided by Defendant. Each of Plaintiffs' audits showed that Defendant was delinquent on some amount of fringe benefit contributions, but the alleged incompleteness of Defendant's records made a definite deficiency amount difficult to ascertain. (Whatley Aff. at ¶ 13; *see also* Whatley Aff. at Ex. P).

In July of 2012, Plaintiffs filed a Complaint requesting that this Court require Defendant to produce all of the requested books and records for an audit of its fringe benefit fund contributions that accrued on or after January of 2009. Following the close of discovery, Plaintiffs' auditor claims that Defendant owes $23,349.93 in delinquent contributions. Plaintiffs further claim that Defendant owes $1,508.80 in interest on the unpaid contributions, $2,309.69 in damages, $21,103.13 in attorneys' fees, and $104.31 in late payment assessments, and $3,606.00 for the cost of the audit – for a total damages claim of $51,981.86. (*See* Pl.'s Mo. at 9).

## ANALYSIS

ERISA requires that an employer maintain employee records "sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). If an employer fails to keep adequate records, the burden lies with the employer to prove which hours worked by its employees are covered under the employee benefit plan and which are not. *Michigan Laborers' Health Care Fund, et. al., v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994). If the employer does not meet its burden, it is liable for all of the hours worked for a time period where

3

at least some covered hours were worked. *Id.*

Defendant signed a letter of assent to the Project Labor Agreement ("PLA") for the Ralph Bunche School construction job, thereby agreeing to be bound by local collective bargaining agreements then existing between the School District of the City of Detroit and the signatory unions to the PLA, including Local 1191 of the Laborers International Union of North America, AFL-CIO. (*See* Whatley Aff. at Ex. F). Defendant acknowledges that these local collective bargaining agreements required it to make fringe benefit contributions to Plaintiffs. Defendant also admits that it had a duty to maintain employment records per ERISA, 29 U.S.C. § 1059(a)(1).

**A.   Defendant has not produced evidence to support its assertion that it maintained and/or produced sufficient employment records per ERISA.**

In support of their motion for summary judgment, Plaintiffs offer the sworn affidavit of their payroll auditor, Kem Whatley. (Whatley Aff. ¶ 1). Mr. Whatley testified that he has conducted more than 1,000 payroll audits of employers who are required to contribute to multiemployer fringe benefit funds. (Whatley Aff. at ¶ 2). After reviewing all of the briefs and exhibits, this Court finds that Defendant has not created a genuine issue of material fact regarding whether it kept sufficient employment records.

**i.   Defendant has not shown that it maintained adequate employment records.**

Whatley opined that Defendant did not maintain and/or produce adequate employment records as required by ERISA. First, Whatley testified that Plaintiffs requested all employee books and records for the time period starting in April 2009. (Whatley Aff. at ¶ 11). However, Defendant only produced documentation beginning in 2011; even then, Defendant produced certified payroll reports for only the Bunche School project. (Whatley Aff. at ¶ 11-12).

Whatley further testified that the certified payroll documents produced by Defendant are "not

4

the type of records on which a full payroll audit is properly conducted" because, unlike a checkstub or time card, they are not the primary payroll documents that show hours of work performed for which employees are paid. (Whatley Aff. at ¶ 14). Rather, certified payroll reports are created "for a specific purpose for a third party." (Whatley Aff. at ¶ 14). Defendant never disputes this assertion, nor does Defendant offer any evidence to the contrary.

Whatley also illustrated the substantive inaccuracy and incompleteness of the certified payroll reports. For example, Whatley testified that Defendant's own Employee Roster shows that a laborer-employee named Jacson Jackson worked three hours on April 19, 2011, but his name never appears in the certified payroll records. (*See* Whatley Aff. at ¶ 22). Defendant does not specifically address this charge nor offer any explanation for the alleged inconsistency.

    **ii.**    **Defendant has not shown that it maintained adequate financial records.**

Whatley testified that in the absence of primary payroll records, an auditor will rely on other documents, such as account statements and check registers, to determine wages paid to employees. (Whatley Aff. at ¶ 15). Defendant produced its PNC bank check register and Plaintiffs subpoenaed documents, including cancelled checks, pertaining to Defendant's two bank accounts. (Whatley Aff. at ¶ 16-17).

Whatley testified that Defendant's certified payroll reports, cancelled checks, bank check register, and W-2 forms do not correspond with each other as would be expected. (Whatley Aff. at ¶ 19). To illustrate, Whatley explained that laborer-employee Eric Woods' wages were reflected on the W-2 form and in certified payroll, but not reflected in Defendant's check register or cancelled checks as they should have been. (Whatley Aff. at ¶ 19). Plaintiffs argue that the inconsistency in Defendant's financial documents further proves that Defendant's books and records were

inadequately maintained.

Defendant first attempts to counter Whatley's claims with the blanket assertion that it produced "more than enough" documentation to satisfy its record-keeping duty under ERISA. Specifically, Defendant argues that its certified payroll records were substantially corroborated by its W-2 forms, W-3 forms, and extra work orders, but that Whatley simply chose not to evaluate or consider these additional sources of information.

This argument ignores the evidence. Whatley testified that he did consider Defendant's W-2s alongside other records as he was conducting his audit. (Whatley Aff. at ¶ 19). Moreover, Plaintiffs assert, and Defendant does not deny, that the W-2s produced by Defendant were in contradiction with the certified payroll records and cancelled checks also produced. (Whatley Aff. at ¶¶ 18, 19). Rather than filling in the gaps in the certified payroll records, Plaintiffs argue that Defendant's additional financial documents invited even more confusion. Defendant claims that these additional documents bolster the adequacy of his record-keeping when, in fact, they do just the opposite. Therefore, this Court finds that Plaintiffs have foreclosed all genuine issues of material fact as to whether Defendant maintained proper employment records.

### iii.    Plaintiffs have established that *Grimaldi* applies to this case.

If an employer fails to keep adequate records, the burden lies with the employer to prove which hours worked by its employees are covered under the employee benefit plan and which are not. *Grimaldi*, 30 F.3d at 697. Because this Court finds that Plaintiff established Defendant's failure to maintain adequate employment records sufficient to produce a reliable audit, this Court agrees with Plaintiff that the *Grimaldi* burden-shifting analysis applies to this case.

Defendant attempts to distinguish *Grimaldi* by pointing out that the *Grimaldi* court applied

the burden-shifting analysis when the company at issue failed to maintain records for 80% of work performed constituted inadequate record keeping under ERISA. (Def.'s Resp. at 12). Defendant argues that its record keeping should be deemed adequate because it was not *as deficient* as the company in *Grimaldi*.

However, Defendant does not cite to any authority in support of its apparent position that "less neglect" than what was exhibited in *Grimaldi* would not support a finding of inadequate record keeping. The text of ERISA makes clear that volume is not the standard by which adequacy is adjudged. Defendant could have produced an infinite amount of employment records, but if none of them coalesce to *sufficiently establish the amount of contributions to which Defendant's employees are entitled*, Defendant has still not satisfied its statutory duty of record keeping per ERISA. *See* 29 U.S.C. § 1059(a)(1) (emphasis added). Therefore, Defendant bears the burden of proving which hours worked are not covered.

**B.      Defendant has raised a genuine issue of material fact as to some hours worked for which Plaintiffs claim delinquent fringe benefit contributions.**

Defendant has the burden of establishing what work performed by Defendant's employees is not covered by the collective bargaining agreement. *Grimaldi*, 30 F.3d at 697. If Defendant fails to meet this burden, it is "liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." *Id.*

Defendant cites several areas where it contends genuine disputes exist: 1) the total number of labor hours worked on the BCBS project; 2) whether contributions are due and owing for "janitorial" services performed on the Bunche job; 3) whether contributions are owed for non-union employee work for whom defendant allegedly paid fringe benefit contributions directly to the employees, and 4) whether Plaintiffs properly included in the audit checks that Defendant made

7

payable to "cash" that had "payroll" in the memo line.

      **i.**      **Total labor hours worked on BCBS project**

Defendant argues that a genuine issue of material fact exists as to the amount of laborer hours his employees worked pursuant to the Blue Cross Blue Shield ("BCBS") contract Defendant entered into in early 2012. Yet, Defendant has not come forth with any documentary evidence negating Plaintiffs' contention that all of the BCBS work constituted covered laborer hours. Plaintiff is correct to point out that Defendant's mere statement in his affidavit as to the classification of his employees, without further support, is insufficient to establish an issue of material fact. *See Plumbers Local 98 Defined Bene. Pension Fund, et. al., v. M&P Master Plumbers of Michigan, Inc.,* 608 F.Supp.2d 873, 881 (E.D. Mich. 2009).

This is especially true in light of Defendant's own sworn statement regarding the amount of fringe benefit contributions due and owing for the BCBS job. (*See* Whatley Aff. at Ex. O). Defendant now claims that Harold Alford III, Mike Bines, and Forrest Crutchfield, are incorrectly classified as laborers in his sworn statement. However, Forrest Crutchfield and Harold Alford III are each classified by Defendant as "laborer/cleaner sweeper" in Defendant's own certified payroll records. (*See* Whatley Aff. at Ex. J, p. 1, 7, 17, 19, 23, 27). Defendant's own documentation contradicts its argument, and is otherwise unsupported. Therefore, Defendant has not created a genuine issue of material fact on this issue.

      **ii.**      **"Janitorial" services performed on the Bunche job**

Defendant next argues that all work on the Bunche job for which Plaintiffs claim contributions is non-laborer "janitorial" work and is, therefore, not covered under the collective bargaining agreement. Both parties agree that the PLA for the Bunche job excluded work performed

by "the non-manual classification of . . . janitor . . . ." (Whatley Aff. at Ex. E, § 2-4).

This Court finds that Defendant has produced no evidence indicating that any employee was classified as "janitor" on the Bunche project, much less an employee for whom Plaintiffs now claim delinquent contributions.

Harold Alford, sole owner of Defendant, testified in his sworn affidavit that much of the labor on the Bunche job consisted of moving furniture and that this type of work is not "covered work" under the PLA. Mr. Alford's unsupported affidavit does not, by itself, create a question of material fact on this issue either. *See M&P Master Plumbers*, 608 F.Supp.2d at 881.

In support of Mr. Alford's affidavit, Defendant cites to the affidavit of Michael Schlenke, the project director for the general contractor on the Bunche project, to establish that the alleged Bunche deficiency was for janitorial work and, thus, excluded from coverage under the collective bargaining agreement. (Def.'s Resp. at Ex. 10).

But Mr. Schlenke affirms no such proposition. Mr. Schlenke does admit that "[i]t is customary to exclude any janitorial work from fringe benefit contributions that would be owed by Alford". (Def.'s Motion at Ex. 10, ¶ 7). But, contrary to Defendant's assertion, Mr. Schlenke never testified that "a significant portion of [Defendant's] 'labor' work was for janitorial activities of moving furniture. . .", nor did Mr. Schlenke testify that "this was the work typically done by school janitors . . . ." (*See* Def.'s Resp. at 6; *compare* Def.'s Resp. at Ex. 10).

Defendant produced no evidence, other than the two aforementioned affidavits, that would create a genuine issue of material fact on this issue. Therefore, Defendant has not created a genuine issue of material fact regarding janitorial work on the Bunche job.

**iii.    Contributions for non-union employee work**

Defendant argues that Plaintiffs are *estopped* from including non-union labor hours in its delinquent contributions calculation because it would be "unjust and inequitable to require Defendant to pay to Plaintiffs the fringe benefits it has already directly paid to non-union employees." (Def. Resp. at 12). Defendant's owner testified that the PLA allowed for non-union labor to be used on the Bunche project, and that he paid the amount of fringe benefit contributions directly to his non-union employees. (Alford Aff., attached to Def.'s Resp. at Ex. 11). The parties do not dispute that non-union labor was allowed per the PLA on the Bunche project.

Plaintiffs note that Defendant offered no evidence whatsoever that proves that it paid fringe benefit contributions directly to these non-union employees. Nevertheless, Plaintiffs claim that the PLA requires Defendant to pay all fringe benefit amounts to the trust funds. (Whatley Aff. at Ex. E, § 4-1). Plaintiffs argue that direct payment of fringe benefit amounts to employees is not a defense to a delinquent contribution action, even if it results in a double payment by the employer. (Pl.'s Reply at 3, *citing Brogan v. Swanson Painting Co.,* 682 F.2d 807, 809 (9th Cir. 1982); *Local 9 International Union of Operating Engineers v. Siegrist Construction Co.*, 458 F.2d 1313, 1316 (10th Cir. 1972)).

As a threshold matter, this Court rejects Defendant's estoppel argument because Defendant does not identify the representation made by Plaintiffs on which it relied to its detriment. Such a showing is required to establish a *prima facie* defense of estoppel.

Setting aside the meritless estoppel claim, this Court agrees with Plaintiffs' interpretation of the PLA along with the relevant case law. Even if Defendant did make the contributions directly to non-union employees (which it has not proven), Defendant is not relieved of its contractual obligation under the local collective bargaining agreement to make fringe benefit contributions to

10

Plaintiffs' funds for covered work performed. *See Brogan*, 682 F.2d at 809 ("[t]he contractor's cash payment of equivalent benefits to non-union employees does not . . .excuse the contractor's obligation to contribute to the trust funds.").

For purposes of this motion, Defendant has not come forward with any evidence indicating how many hours should be excluded as non-union labor hours. Thus, as to the issue of non-union laborer contributions, Defendant has yet again failed to create a genuine issue of material fact necessitating trial.

      **iv.**    **Checks made payable to "Cash" containing "Payroll" on the memo line**

In his payroll audit, Whatley included the amounts of two checks, both made payable to "cash", and both containing the word(s) "payroll" or "for payroll" on the "memo" line of the check. (Whatley Aff. at ¶ 33).

Plaintiffs argue that Harold Alford, Defendant's sole owner, cashed these checks and used the proceeds to pay employees' wages. Plaintiffs made out their circumstantial case for inclusion of these checks, arguing that the checks

> correspond in time to the first work performed on the Bunche School job, for which defendant's "certified payroll" shows fewer employees working than the general contractor's Daily construction reports, and for which time defendant's records show an employee working as a laborer who does not appear on the certified payroll, and which time an employee appears on the certified payroll but who did not received [sic] wages pursuant to a check.

(Pl.'s Motion at 6).

On the other hand, Defendant maintains that the checks were used to provide for Mr. Alford's own salary. (*See* Aff. of Harold O. Alford, attached to Def.'s Resp. at Ex. 11, ¶¶ 6-7). When Mr. Alford was deposed, he confirmed that the type of checks at issue were likely used for his salary:

11

> Q: Page 38, which is a check for $5,500 made out to cash and the memo line says cash for payroll. What was that for?
> A: Again, I don't recall, but it would probably be for myself.
> Q: And when you say it's for yourself, are you saying that was your salary or that that was just for things that you would want to use or buy?
> A: My salary.

(Dep. of Harold O. Alford, attached to Whatley Aff. at Ex. S, pp. 35:7-15).

With regard to this issue, Defendant has come forth with evidence sufficient to withstand summary judgment. Plaintiffs' case for inclusion of these check amounts is circumstantial. Plaintiffs' auditor even admits that he categorized these check amounts as "wages earned by unknown laborer employees, *in the absence of documentation as to who received such monies*." (Whatley Aff. at ¶ 33). Defendant has since testified on two separate occasions that he did not use these particular checks to pay cash to employees. (*See* Def.'s Resp. at Ex. 11, ¶¶ 6-7; *see also* Whatley Aff. at. Ex. S, pp. 35:7-15).

Plaintiff correctly notes that other district courts have held that cash used to satisfy payroll is subject to employee fringe benefit obligations. *See*, *e.g., Chicago Painters and Decorators Pension Trust Fund, et. al., v. Destiny Decorators*, *Inc.*, 2009 U.S.. Dist. LEXIS 91191 (N.D. Ill. 2009). However, in *Chicago Painters*, plaintiffs had obtained affidavits from three former employees of defendant whereby those employees testified that defendant had paid them in cash in the past. *Id.* at *20-21. Plaintiffs here have presented no such evidence. Without more, Plaintiffs cannot even prove that Defendant ever used cash to pay for employees, much less cash from the checks at issue in this case.

Plaintiffs presumed these check amounts were laborer wages when no information to the contrary existed. Defendant has offered evidence to rebut Plaintiffs' presumption as to these checks. At the very least, this Court finds that a genuine issue of material fact exists as to whether these

checks were used to pay laborer wages or used to pay Mr. Alford's salary.

**C.     Because Plaintiffs have succeeded in recovering delinquent contributions from Defendant, Plaintiffs are also entitled to reimbursement of reasonable attorneys' fees and costs.**

Plaintiffs also seek to recover from Defendant the amount of reasonable attorneys' fees and costs accrued in the prosecution of this action. (Pl.'s Motion at 9). In support, Plaintiffs filed the affidavit of Amy Bachelder, one of Plaintiffs' counsel in this case. Ms. Bachelder testified as to the number of hours billed and the cost of each hour billed. (*See* Bachelder Aff.). Plaintiffs claim their attorneys' fees and costs, for the period of January 2012 to May 2013, total $21,103.13. (Pl.'s Motion at 4; *see* Bachelder Aff. at ¶ 13; *see also* Bachelder Aff. at Ex. A).

In support of their claim for attorneys' fees, Plaintiffs rely on section 1132(g)(2)(D) of ERISA, which provides that

> [i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which judgment in favor of the plan is awarded, the court **shall** award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2)(D) (emphasis added).

"Section 1145 of this title", which is referred to in the above-mentioned code section, sets forth an employer's statutory obligation to make contributions to a multiemployer plan when the plan or a collective bargaining agreement so requires. 29 U.S.C. § 1145. Here, Plaintiffs are fiduciaries of the underlying trust funds and they sued to enforce Defendant's obligations under section 1145. *See* Pl.'s Compl. at ¶ 3. Thus, section 1132(g)(2)(D) governs whether Plaintiffs are entitled to an award for attorneys' fees.

Courts in this circuit have long recognized that section 1132(g)(2)(D) requires that a court *must* award reasonable attorneys' fees and costs to a prevailing plan fiduciary when they are

requested to do so. *Trustees of the Painters Union Deposit Fund v. Interior/Exterior Specialist, Co.*, 2011 WL 204750 at *4 (E.D. Mich. 2011), *citing Bldg. Serv. Local 47* v. *Grandview Raceway*, 46 F.3d 1392, 1404 (6th Cir. 1995); *see also Operating Engineers Local 324 Health Care Plan v. Dalessandro Contracting Group, LLC,* 2012 WL 4513716 at *3 (E.D. Mich. 2012).

In this circuit, the "lodestar" amount is used to determine what constitutes "reasonable attorneys' fees". *Painters Union Deposit Fund*, 2011 WL 204750 at *4, *citing Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). The lodestar amount "is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* The party who requests fees must submit adequate supporting documentation of hours worked and the hourly rate of the attorneys who worked the case. *Id.* Once the party seeking fees has established that the number of hours and rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee. *Id.* at *5.

One of Plaintiffs' counsel, Amy Bachelder, filed a detailed affidavit setting forth the names of the attorneys who performed work on Plaintiffs' case, the total number of hours each attorney expended, and the cost of each billable hour for each attorney. (*See* Bachelder Aff. ¶¶ 1-7). Plaintiffs' attorneys have spent roughly 113 billable hours working on Plaintiffs' case, for a total cost of $19,194.00. (Bachelder Aff. at ¶ 12). Costs associated with the action total $1,909.13, for a total amount of attorneys' fees and costs of $21,103.13. (Bachelder Aff. at ¶¶ 12, 13).

In its response brief, Defendant does not challenge the accuracy of the total amount of hours worked by Plaintiffs' attorneys, nor does Defendant challenge the reasonableness of Plaintiffs' fee. Instead, Defendant argues that Plaintiffs' attorneys' fees are unreasonable because Plaintiffs' audit initially included unpaid benefits based on the Superintendent Reports, and Defendant claims this

14

error purportedly prevented the progress of this dispute and drove up the amount of legal fees.

This Court rejects Defendant's position. First, Defendant has only alleged that Plaintiffs' reliance on the Superintendent Reports was "in bad faith" – it has not proven as much. Even if such reliance was erroneous, Plaintiffs only attempted to utilize third party documentation, like Superintendent Reports, based on Defendant's failure to maintain adequate employment records in the first place.

Next, Defendant supports its position with citations to authorities that simply are not on point. (*See generally* Def.'s Resp. at 13-14). Defendant cites only to cases that analyze the *discretionary* award of attorneys' fees under 29 U.S.C. §1132(g)(1), not the *mandatory* award of attorneys' fees under 29 U.S.C. §1132(g)(2), which is the code section at issue here. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006), *citing Secretary of Labor v. King*, 775 F.2d 666, 669 at fn 5 (6th Cir. 1985)(noting that Plaintiff sought attorneys' fees pursuant to Title 29, section 1132(g)(1)); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 2159 (2010) (" . . . we need not decide today whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under [29 U.S.C.] § 1132(g)(1).")).

Because this Court has awarded summary judgment to Plaintiffs based on Defendant's duty under 29 U.S.C. § 1145, an award of attorneys' fees and costs in Plaintiffs' favor is **mandatory.** Furthermore, Defendant has not provided any basis for a finding that Plaintiffs' claimed amount of attorneys' fees is unreasonable. Therefore, this Court finds that Plaintiffs are entitled to attorneys' fees and costs in the amount of $21,103.13.

## CONCLUSION

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED as to its claimed amount of delinquent fringe benefit contributions, except for any amount of fringe benefits attributable to the checks made payable to "Cash" with "Payroll" in the memo line. IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED as to Plaintiffs' entitlement to reimbursement for its attorneys' fees and costs in pursuing this action.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 27, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager